

SO ORDERED,

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: April 9, 2015

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                                 CHAPTER 11
L HARRIS CONSTRUCTION COMPANY                             CASE NO. 1401450EE


L HARRIS CONSTRUCTION COMPANY

VS.                                                                        ADVERSARY NO. 1400037EE

MISSISSIPPI DEPARTMENT OF REVENUE


Hon. James G. McGee, Jr.                                              Attorney for Debtor
jmcgee@mcgeetaxlaw.com
125 South Congress Street, Suite 1240
Jackson, MS  39201


Hon. Kenitta Franklin Toole                 Attorney for Mississippi Department of Revenue
kenitta.toole@dor.ms.gov
Post Office Box 22828
Jackson, MS  39225


Edward Ellington, Judge

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** came before the Court on the *Motion to Dismiss Adversary* (Adv. Dkt. #9) filed by the Mississippi Department of Revenue, the *Response in Opposition to Defendant's Motion to Dismiss* (Adv. Dkt. #32) filed by L Harris Construction Company[1], and the *Reply to Response to Motion to Dismiss* (Adv. Dkt. #34) filed by the Mississippi Department of Revenue. Having considered same and the respective briefs filed by the parties, the Court finds that the *Motion to Dismiss Adversary* (Adv. Dkt. #9) filed by the Mississippi Department of Revenue should be granted.

## FINDINGS OF FACT[2]

On the onset, the Court will note that this adversary proceeding is one of at least four (4) adversary cases filed before this Court challenging tax assessments by the Mississippi Department of Revenue (MDOR).[3] In addition, similar adversaries challenging MDOR tax assessments are pending before the other three (3) Mississippi bankruptcy judges.

According to the web site of the State of Mississippi's Secretary of State, the L Harris Construction Company (L Harris) was created as a for profit corporation on October 26, 2006. L

---

[1]At times, the name for the Debtor is styled **L** Harris Construction Company. At other times, it is styled **L.** Harris Construction Company. Because the petition was filed as L Harris Construction Company, the Court will use L Harris Construction Company.

[2]These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[3]*Norman T. Watson*, Adv. Proc. No. 1300101EE; *Benzu Technologies, Inc.*, Adv. Proc. No. 1400017EE; and *Signs, Inc.,* Adv. Proc. No. 1400018EE.

Harris has its principal place of business at 819 Robinson Road, Canton, Mississippi.  The President of L Harris is Lonnie Harris.

On January 25, 2012, MDOR issued to L Harris an *Assessment of Sales Taxes*[4] (Assessment). The Assessment states that "pursuant to an audit or other information relating to your records or returns,"[5] MDOR assessed L Harris with a total assessment of $593,365.00 for sales taxes due from June 1, 2008, to October 31, 2011.  The Assessment further states that L Harris had sixty (60) days from the date of the assessment to either pay the assessment in full or to file an appeal with the MDOR's Board of Review (BOR.).  The Assessment states the address where L Harris was to mail an appeal.

L Harris filed a timely appeal with the BOR.  On Thursday, May 10, 2012, the three member BOR held a hearing on L Harris's appeal (BOR Hearing).  The *Minutes of the Called Meeting of the Board of Review Held Thursday, May 10, 2012,*[6] (BOR Minutes) state that L Harris was represented by an attorney, James G. McGee, at the BOR Hearing and that Mr. Harris was present.  The BOR Minutes further state that Mr. Harris brought documentation with him to the BOR Hearing, but did not provide documentation for all of the transactions during the time period of the assessment.  The BOR Minutes further state that "[t]he taxpayer requested additional time to supply any additional documents and was granted two weeks."[7]

---

[4]*Memorandum in Opposition to Defendant's Motion to Dismiss*, Adv. Proc. No. 1400037EE, Adv. Dkt. #33, Exhibit A, *Assessment of Sales Taxes*, February 20, 2015. (Memorandum)

[5]*Id.*

[6]*Id.* at Exhibit B, *Minutes of the Called Meeting of the Board of Review Held Thursday, May 10, 2012*, February 20, 2015.

[7]*Id.*

The BOR entered its *Order of the Board of Review Department of Revenue, Jackson, Mississippi* (BOR Order) on July 5, 2012.  After "[hearing] and carefully [considering] all the evidence presented by the taxpayer,"[8] the BOR found that the Assessment should be affirmed but at a reduced amount.  The BOR reduced the Assessment from $593,365.00 to $461,743.00.

The BOR Order states that L Harris had sixty (60) days from the date of the order to either pay the assessment in full or to file an appeal with the Mississippi Board of Tax Appeals.  The BOR Order states the address where L Harris was to mail an appeal.

L Harris timely appealed the BOR Order to the Mississippi Board of Tax Appeals (BTA).  The BTA held a hearing on February 20, 2013, (BTA Hearing) on L Harris' "protest and appeal from an assessment of sales tax."[9]

On June 5, 2013, the BTA entered its *Order* (BTA Order).  The BTA Order states that L Harris was represented by James G. McGee, Jr. at the BTA Hearing and that Mr. Harris and his wife, Movelyn A. Harris, attended the hearing.  The BTA Order further states: "the decision of the Board of Review to reduce the assessment of sales tax to $461,743.00 and to uphold and affirm the assessment as reduced should be upheld and affirmed."[10]

The BTA Order states that L Harris had sixty (60) days from the date of the order to pay the assessment in full or to file a petition in chancery court requesting a hearing pursuant to Miss. Code § 27-77-7.  The sixty (60) days ran on or about August 4, 2013.

---

[8]*Id.* at Exhibit B, *Order of the Board of Review Department of Revenue, Jackson, Mississippi*, February 20, 2015.

[9]*Id.* at Exhibit C, *Order*, February 20, 2015.

[10]*Id.* at 2.

Some four (4) months after the BTA Order was entered on June 5, 2013, L Harris, by and through its attorney James G. McGee, Jr., filed a *Complaint* (Chancery Complaint) on October 10, 2013, in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against the Commissioner of Revenue of the Mississippi Department of Revenue, Ed Morgan, and the Executive Director of the Mississippi Board of Tax Appeals, Sam Polk. In the Chancery Complaint, L Harris requests that pursuant to Miss. Code § 11-13-11, the court enter a judgment declaring that the Assessment "was not in conformity with the law;"[11] that the tax lien filed by MDOR should be released; and, that MDOR should be prohibited from any further collection action against L Harris.

The MDOR filed a motion to dismiss the Chancery Complaint and filed a motion for summary judgment on behalf of Sam Polk. However, before the chancery court could hear the motions on May 1, 2014, L Harris (Debtor) filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 30, 2014.

On May 8, 2014, MDOR filed its *Emergency Motion to Determine that the Automatic Stay Does Not Bar Lawsuit Currently Pending Filed by Debtor or in the Alternative, for Relief from the Automatic Stay* (Dkt. #24) (Stay Motion). In its Stay Motion, MDOR prays that the Court enter an order declaring that the automatic stay did not bar MDOR from defending itself in the chancery court action or in the alternative, to declare that the stay is lifted to allow the litigation to proceed. On May 19, 2014, the Debtor and MDOR's *Agreed Order on Motion to Determine Stay or to Lift the Automatic Stay* (Dkt. #45) was entered lifting the stay to allow the parties to proceed in chancery court through the entry of a final order.

---

[11]*Emergency Motion to Determine that the Automatic Stay Does Not Bar Lawsuit Currently Pending Filed by Debtor or in the Alternative, for Relief from the Automatic Stay*, Case No. 1401450EE, Dkt. #24, Exhibit A, *Complaint*, p. 6, May 8, 2014.

On June 19, 2014, the chancery court held a hearing on MDOR's motion to dismiss the Chancery Complaint.[12]  The attorney for MDOR argued that the Debtor could not attack the validity of the sales tax Assessment under Miss. Code § 11-13-11, but rather, a complaint attacking the validity of an assessment must be brought under Miss. Code § 27-77-7.[13]  MDOR asserted that since the BTA entered its order on June 5, 2013, any complaint challenging the Assessment had to be filed within sixty (60) days of June 5, 2013, or by August 4, 2013.  Since the Chancery Complaint was filed more than sixty (60) days after BTA Order was entered, MDOR asserted that the chancery court did not have jurisdiction to hear the challenge to the Assessment.[14]

In response to MDOR's arguments, Mr. McGee told the chancellor that "I agree with everything Ms. Marbury just said."[15]  The chancellor announced from that bench that the Chancery Complaint would be dismissed without prejudice.  Thereafter, the chancellor entered an order on June 23, 2014, dismissing the Chancery Complaint without prejudice.

The above-styled adversary proceeding was commenced on June 16, 2014, by the Debtor filing its *Complaint of L. Harris Construction Company Initiating Adversary Proceeding* (Adv. Dkt. #1) (Complaint).  In its Complaint, the Debtor alleges that "the Notice of Assessment was never

---

[12]According to the transcript of the hearing on the MDOR's motion to dismiss the Chancery Complaint, Sam Polk, the Executive Director of the Board of Tax Appeals, was dismissed as a defendant at some point prior to the June 19, 2014, hearing.  *Motion to Dismiss Adversary,* Adv. Proc. No. 1400037EE, Adv. Dkt. #9, Exhibit C, *Transcript of Hearing Held on Thursday, June 19, 2014, in the Above Styled and Numbered Cause before Judge J. DeWayne Thomas, Commencing at 1:32 P.M.,* p. 5, July 17, 2014. (Transcript).

[13]*Id.* at 3.

[14]*Id.* at 5

[15]*Id.* at 6.

properly delivered to the [Debtor] in accordance with the statutory requirements. . .[and that] MDOR has failed to produce a copy of the certified mail receipt and/or 'green card' indicating that the Notice of Assessment was properly delivered to the [Debtor]."[16]

Count One of the Debtor's Complaint asserts that the Assessment is void because of lack of adequate notice and because the MDOR based the Assessment on "alternative accounting methods not permitted when adequate records exist"[17] to calculate the Debtor's tax liability. Count Two "avers that the unlawful tax assessments filed by MDOR are dischargeable in case No.: 14-01450."[18] Count Three "asserts that this complaint is the initial pleading by which an adversarial *(sic)* proceeding is initiated with regard to the subject dispute between the [Debtor] and MDOR."[19]

On July 17, 2014, MDOR filed its *Motion to Dismiss Adversary* (Adv. Dkt. #9) (Motion to Dismiss). In its Motion to Dismiss, MDOR asserts that the adversary should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[20] because the Complaint fails to state a claim upon which relief can be granted.

The Debtor filed a *Response in Opposition to Defendant's Motion to Dismiss* (Adv. Dkt. #32)

---

[16]*Complaint of L. Harris Construction Company Initiating Adversary Proceeding,* Adv. Pro. No. 1400037EE, Adv. Dkt. #1, p. 2-3, June 16, 2014.

[17]*Id.* at 4.

[18]*Id.*

[19]*Id.*

[20]Federal Rule of Civil Procedure 12 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012. For purposes of this Opinion, the Court will refer to Rule 7012 as Rule 12.

(Response) on February 20, 2015.[21]  In its Response, the Debtor states that MDOR issued the Assessment and that the Debtor timely appealed to the BOR.  Thereafter, the Debtor appealed the BOR Order to the BTA.  The Debtor alleges that the BTA failed to send the BTA Order to it and its attorney.  However, the Debtor states that when it received the BTA Order, it immediately appealed to the chancery court.  The Debtor asserts that the Motion to Dismiss should be denied because the chancery court dismissed its Chancery Complaint without prejudice, consequently "the [Debtor] has yet to receive a final adjudication on the merits by the Chancery Court and the [Debtor] still has the opportunity for judicial review in the Chancery Court."[22]

MDOR filed its *Reply to Response to Motion to Dismiss* (Adv. Dkt. #34) (Reply) on March 6, 2015.  In its Reply, MDOR states that the Assessment has been contested and adjudicated and that its Motion to Dismiss should be granted.  The Court then took the matter under advisement.[23]

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant

---

[21]The above-styled adversary proceeding was dismissed on August 22, 2014, because the Debtor failed to file a response to MDOR's Motion to Dismiss.  The Debtor filed a motion to reinstate the adversary proceeding, and the Court ultimately entered an *Order Granting Motion to Reinstate Adversary Proceeding* (Adv. Dkt. #27).

[22]*Response in Opposition to Defendant's Motion to Dismiss,* Adv. Pro. No. 1400037EE, Adv. Dkt. #32, p. 2, Feb. 20, 2015.

[23]On October 29, 2014, the Court entered an *Order Holding Adversary in Abeyance* (Adv. Dkt. #28).  The above-styled adversary was held in abeyance pending the outcome of the direct appeal to the Court of Appeals for the Fifth Circuit in the similar case of *Conoway v. Miss. Dept. of Rev.,* Adversary No. 1401002JDW (Bankr. N.D. Miss.).  On December 19, 2014, the Fifth Circuit denied the parties request for a direct appeal.  On January 27, 2015, the Court entered an *Order Setting Aside Order Holding Adversary in Abeyance (Adv. Dkt. #28) and Setting Response Deadlines to Motion to Dismiss Adversary (Adv. Dkt. #9)* (Adv. Dkt. #30).

to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I). However, for the reasons expressed below, the Court lacks jurisdiction to redetermine the Debtor's tax liability pursuant to 11 U.S.C. § 505(a)(2)(A).[24]

## II.  Rule 12(b)(6)

This Court addressed the standards under Rule 12(b)(6) in *Cadlerock, LLC v. Morey (In re Morey),* 11-00005EE, 2012 WL 369486 (Bank. S.D. Miss. Feb, 3, 2012):

> Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, subsection (d)(1) supplements subsection (a) by requiring that "each allegation must be simple, concise, and direct." "Rule 8 tests the sufficiency of the pleading rather than the sufficiency of the cause of action or claims asserted therein." *Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 612 (Bankr. N.D. N.Y. 2010). While the movant is not required to give detailed statements of fact, the movant must plead something more than mere conclusory statements or "unadorned, the-[debtor]-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A pleading that offers nothing more than 'threadbare recitals of the elements of a cause of action,' without supporting factual allegations, will not suffice. [*Iqbal*] at 1950 (*citing Twombly,* 550 U.S. at 555, 127 S.Ct. 1955)." *Henderson,* 423 B.R. at 612.
>
> If a complaint does not meet the standards of Rule 8, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides the avenue for dismissal of a complaint for "failure to state a claim upon which relief can be granted." In addressing a Rule 12(b)(6) motion to dismiss in *McCoy v. Mississippi State Tax Comm. (In re McCoy),* 2009 W.L. 2835258 (Bankr. S.D. Miss. 2009), this Court held:
>
>> The pleading standards that apply to a Rule 12(b)(6) motion to dismiss arise out of the requirement in [Fed. R. Civ. P.] 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that to survive such a motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In *Twombly* the Supreme Court revisited the often-quoted language in its decision

---

[24]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

in *Conley v. Gibson,* 355 U.S. 41 (1957), that a complaint should not be dismissed at the pleading stage "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim," *Id.* at 45-56, and concluded that courts had interpreted the "no set of facts" language too literally. *Twombly,* 550 U.S. at 561-62.

More recently, in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), the Supreme Court described application of the "plausibility" standard in *Twombly* as a two-part analysis. First, a court should begin by identifying those allegations in the complaint that, unlike non-conclusory, factual allegations, are not entitled to the assumption of truth. *Iqbal,* 129 S.Ct. at 1949-50. A pleading that includes "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Second, a court should determine whether the non-conclusory factual allegations in the complaint plausibly suggest a claim for relief. *Iqbal,* 129 S.Ct. At 1950. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly,* 550 U.S. at 555. Although Rule 8 does not require "detailed factual allegations," a complaint must provide the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true, nudge the claim across the line from conceivable to plausible.

In affirming this Court's decision in *McCoy,* the Court of Appeals for the Fifth Circuit stated, "[o]ur task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Lone Star Fund,* 594 F.3d at 387 (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)). In other words, we look to see whether [the plaintiff's] pleadings, including her legal arguments, plausibly state a claim that her tax debt should be discharged pursuant to § 523(a)." *In the Matter of McCoy,* No. 11-60146, slip op., p. 4 (5th Cir. Jan. 4, 2012).

"The 'plausibility' test is met only where 'the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Darby v. Southern Care, Inc.,* 2010 WL 4168671, at *1 (N.D. Miss. Oct. 19, 2010)(emphasis added)." *Thorne v. Prommis Solutions Holding Corp., (In re Thorne),* 2011 WL 2496217, *2 (Bankr. N.D. Miss. June 22, 2011).

*In re Morey*, No. 1100005EE, 2012 WL 369486, at *3-4 (Bankr. S.D. Miss. Feb. 3, 2012) (footnotes

omitted).

When reviewing the Debtor's Complaint, the Court must decide, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994). "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Bass v. Stryker Corp.,* 669 F.3d 501, 506 (5th Cir. 2012) (citation omitted).

Therefore, the issue before the Court is whether the Debtor's factual allegations in its Complaint plausibly state a claim that the debt to MDOR should be discharged and whether the Court may determine the "validity of MDOR's assessments of tax liabilities."[25]

### III. Count Two and Count Three

In Count Two of its Complaint, the Debtor states that the "tax assessments filed by MDOR are dischargeable in case No.: 14-01450."[26] The Debtor does not list any code sections in support of this contention.

Under § 727(a), "the court shall grant the debtor a discharge, unless– (1) the debtor is not an individual." 11 U.S.C. § 727(a)(1). *See Kelley v. Cypress Financial Trading Co., LP,* 518 B.R. 373, 378 (N.D. Tex. 2014). As noted above, the Debtor is a corporation in good standing with the Secretary of State for the State of Mississippi. Since the Debtor cannot prove any set of facts which would entitle it to a discharge, Count Two should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

As for Count Three, the Debtor does not seek any relief, and therefore, Count Three is of no

---

[25] *Complaint of L. Harris Construction Company Initiating Adversary Proceeding,* Adv. Proc. No. 1400037EE, Adv. Dkt. #1, p. 5, June 16, 2014.

[26] *Id.* at 4.

significance.  Count Three simply states the obvious:  the Complaint is the initial pleading by which an adversary proceeding is commenced.  Since Count Three does not seek relief, it too should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

### IV.  Count One

As noted previously, Count One of the Complaint states:

[The Debtor] asserts that the assessments made by MDOR are void as a matter of law based upon MDOR['s] failure to provide adequate notice in violation of the [Debtor's] Rights pursuant to the Fourteenth Amendment to the United States Constitution and the Mississippi State Constitution Art 3 § 14.  Additionally, the MDOR Sales Taxes assessments are based on alternative accounting methods not permitted when adequate records exist, as in this case, to accurately calculate the [Debtor's] actual tax liability in direct violation of Miss. Code § 27-65-37.[27]

In its *Prayer for Relief*, the Debtor asks the Court to determine the validity of MDOR's Assessment and to determine if the Assessment violated the Debtor's right to due process under the law.[28]

The Court must decide, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief."  *Cinel,* 15 F.3d at 1341.  In the case at bar, the Debtor's Complaint states that "the **Notice of Assessment** was never properly delivered to the [Debtor] in accordance with the statutory requirements;"[29] that "mdor has failed to produce a copy of the certified mail receipt and/or 'green card' indicating that the **Notice of Assessment** was properly delivered to the

---

[27]*Complaint of L. Harris Construction Company,* Adv. Pro. No. 1400037EE, Adv. Dkt. #1 at p. 4.

[28]*Id.* at 5.

[29]*Complaint*, Adv. Dkt. #1 at p. 2. (emphasis added)

[Debtor];"[30] and that "all of his *(sic)* Due Process of Law Rights flow from his *(sic)* receipt of the **Notice of Assessment**."[31]

In its Response, the Debtor totally contradicts the allegations in its Complaint that it failed to receive notice of the Assessment.  Instead, the Debtor states in its Response that MDOR issued its Assessment and that the Debtor "appealed the Assessment to the Board of Review"[32] and that the Debtor "then timely appealed the order from the Board of Review to the Board of Tax Appeals."[33]  Indeed, the Debtor attaches as exhibits to its Memorandum copies of the BOR Order and the BTA Order that MDOR attached as exhibits to its Motion to Dismiss.  Contrary to the statements in the Debtor's Complaint, the BOR Order clearly shows that the Debtor and its attorney obviously had notice of the Assessment because they both appeared before the BOR to argue the Debtor's case.

For the first time, the Debtor states in its Response that the BTA "failed to send their *(sic)* Order to the [Debtor] or [the Debtor's] counsel. . . .[O]nce the order was received, the [Debtor] appealed the same to the Chancery Court of Hinds County."[34]  Eight (8) months after the Debtor filed its Complaint, in which the Debtor states that it did not receive notice of the Assessment, the Debtor now states that it did receive notice of the Assessment, however, it did not receive a copy of the

---

[30]*Id.* at 3. (emphasis added)

[31]*Id.* (emphasis added)

[32]*Response in Opposition to Defendant's Motion to Dismiss,* Adv. Proc. No. 1400037EE, Adv. Dkt. #32 at p. 1.

[33]*Id.*

[34]*Id.* at 2.

BTA's Order.[35]

While the total contradiction of positions the Debtor takes in its pleadings is troubling to the Court, whether the Debtor asserts it failed to receive notice of the Assessment or failed to receive the BTA Order will not change the Court's decision of whether, "in the light most favorable to the plaintiff. . .the complaint states any valid claim for relief."  *Cinel,* 15 F.3d at 1341.

### A.  § 505(a)

Section 505(a) provides the authority for a bankruptcy court to determine a debtor's tax liability.  Section 505(a) provides in pertinent part:

11 U.S.C. § 505

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine--

> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;

---

[35]The Court notes that Attached as Exhibit A to the Chancery Complaint is the *Affidavit of Sandra Crosby*.  Ms. Crosby states in her affidavit that she is the Executive Director of the McGee Law Firm.  Ms. Crosby states that she contacted the BTA on or about September 16, 2013, to inquire about the status of the BTA's ruling.  Ms. Crosby states that "I was informed that the Board of Tax Appeal *(sic)* had issued an Order dated June 5, 2013." *Emergency Motion to Determine that the Automatic Stay Does Not Bar Lawsuit Currently Pending Filed by Debtor or in the Alternative, for Relief from the Automatic Stay*, Case No. 1401450EE, Dkt. #24, Exhibit A, *Complaint*, Exhibit A, unnumbered p. 1, ¶ 5, May 8, 2014.  Her affidavit further states that after reviewing the case file, Ms. Crosby "contacted the Plaintiff who informed me they had received a copy of the Board of Tax Appeals Order dated June 5, 2013." *Id.* at ¶ 7.  The Court is unsure if this statement is true or a product of poor drafting and/or poor proofreading.

11 U.S.C. § 505.

Section 505(a)(1) gives a bankruptcy court the power to determine the amount or validity of most taxes, however, subsection(2)(A) limits the bankruptcy court's authority. "The key to resolving the jurisdictional issue is hinged upon the determination of whether the [debtor's] administrative hearing process was an adjudication 'by a judicial or administrative tribunal of competent jurisdiction' prior to the filing of the bankruptcy petition."[36] "Congress appears to have used a broad expression in order to encompass the variety of mechanisms for tax adjudication which might be found throughout the nation."[37]

As explained below, Mississippi uses both administrative tribunals and judicial review. However, some states may only have judicial forums, some only administrative tribunals, and some may be similar to Mississippi and use a combination of both. "The generic language of the statute reflects an apparent congressional intent to defer to the tax adjudication mechanism of a given state, whatever it might be, so long as it results in *an* adjudication."[38] "If it was such an adjudication, the bankruptcy court [does] not have jurisdiction to redetermine [a debtor's] tax liability under § 505(a)(2)(A)."[39]

Consequently, in order to decide if the Complaint states a valid claim for relief, the Court must look to Mississippi law to determine whether the Debtor's tax liability was contested and

---

[36]*Texas Comptroller of Public Accts. v. Trans State Outdoor Advertising Co., Inc. (In re Trans State Outdoor Advertising Co., Inc.)* 140 F.3d 618, 620 (5th Cir. 1998).

[37]*El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.),* 128 B.R. 153, 160 (Bankr. W.D. Tex. 1991).

[38]*Id.* (footnote omitted).

[39]*In re Trans State,* 140 F.3d at 620.

adjudicated by a "judicial or administrative tribunal of competent jurisdiction" as contemplated by § 505(a)(2)(A).

## B.  Mississippi Code

Title 27 of the Mississippi Code sets forth the procedures governing a taxpayer's dispute over the amount of taxes assessed to a taxpayer.  Miss. Code § 27-77-5[40] provides the specific procedure for an aggrieved taxpayer, and provides in pertinent part:

§ 27-77-5. Appeals from Department of Revenue actions:

(1) Any taxpayer aggrieved by an assessment of tax by the agency. . . and who wishes to contest the action of the agency shall, within sixty (60) days from the date of the action, file an appeal in writing with the board of review requesting a hearing and correction of the contested action specifying in detail the relief requested and any other information that might be required by regulation. . . .

(2) Upon receipt of a timely written appeal from a tax assessment. . .a hearing shall be scheduled before the board of review. . . .A notice of the hearing shall be mailed to the taxpayer advising the taxpayer of the date, time and location of the hearing. The taxpayer or his designated representative shall attend the hearing unless a request is made to, and granted by, the board of review to allow the taxpayer to submit his position in writing or by electronic transmission in lieu of attendance. . . .

(3) At a hearing before the board of review on a tax assessment. . .the board of review shall try the issues presented, according to law and the facts and within the guidelines established by regulation. The hearing before the board of review shall be informal and no official transcript will be made of the hearing. At the earliest practical date after the hearing, the members of the board of review that heard the appeal shall make a determination on the matter presented and notify the taxpayer of its findings by mailing a copy of its order to the taxpayer. . . .If in the order the board of review orders the taxpayer to pay a tax assessment, the taxpayer shall, within sixty (60) days from the date of the order, pay the amount ordered to be paid or appeal the order of the board of review to the Board of Tax Appeals. . . .

---

[40]Miss. Code § 27-77-5 was amended by the legislature.  The effective date of amended § 27-77-5 was January 1, 2015.  Since the Assessment and the Debtor's subsequent appeals occurred in 2012 through 2014, and prior to the 2015 amendments, the Court will look to the version of § 27-77-5 in effect prior to January 1, 2015.

(4) Any taxpayer aggrieved by an order of the board of review affirming a tax assessment. . .and who wishes to contest the order shall, within sixty (60) days from the date of the order of the board of review being contested, file an appeal to the Board of Tax Appeals. The appeal shall be in writing and shall request a hearing and reversal or modification of the order of the board of review, specify in detail the relief requested and contain any other information that might be required by regulation, and be filed with the executive director. . . .

(5) Upon receipt of a written appeal from an order of the board of review affirming a tax assessment. . .the executive director shall schedule a hearing before the Board of Tax Appeals on the appeal. A notice of this hearing shall be mailed to the taxpayer and the agency advising them of the date, time and location of hearing. The taxpayer or his designated representative shall attend the hearing unless a request is made to and granted by the Executive Director of the Board of Tax Appeals to allow the taxpayer to submit his position in writing or by electronic transmission in lieu of attendance. . . .

(6) At any hearing before the Board of Tax Appeals on an appeal of an order of the board of review affirming a tax assessment. . .two (2) members of the Board of Tax Appeals shall constitute a quorum. At the hearing, the Board of Tax Appeals shall try the issues presented, according to the law and the facts and pursuant to any guidelines established by regulation. The rules of evidence shall be relaxed at the hearing. Any appeal to chancery court from an order of the Board of Tax Appeals resulting from this type of hearing shall include a full evidentiary judicial hearing on the issues presented. No official transcript shall be made of this hearing before the Board of Tax Appeals. After reaching a decision on the issues presented, the Board of Tax Appeals shall enter its order setting forth its findings and decision on the appeal. A copy of the order of the Board of Tax Appeals shall be mailed to the taxpayer and the agency. . . .

(7) If in its order the Board of Tax Appeals orders a taxpayer to pay a tax assessment, the taxpayer shall, within sixty (60) days from the date of the order, pay the amount ordered to be paid or properly appeal the order of the Board of Tax Appeals to chancery court as provided in Section 27-77-7. After the sixty-day period, if the tax determined by the Board of Tax Appeals to be due is not paid and an appeal from the Board of Tax Appeals order has not been properly filed, the agency shall proceed to collect the tax assessment as affirmed by the Board of Tax Appeals. . . .

Miss. Code. § 27-77-5.

Miss. Code § 27-77-7[41] provides the procedure for appealing a decision by the BTA. Pursuant to Miss. Code § 27-77-7(1), "[t]he findings and order of the Board of Tax Appeals entered under Section 27-77-5 shall be final unless the agency or the taxpayer shall, within sixty (60) days from the date of the order, file a petition in the chancery court appealing the order." Miss. Code § 27-77-7(1).

Subsection three of Miss. Code § 27-77-7 further provides provisions regarding the posting of a surety bond or the payment of the tax owed when appealing an order of the BTA:

> (3) A petition filed by a taxpayer under subsection (1) of this section that appeals an order of the Board of Tax Appeals affirming a tax assessment shall be accompanied by a surety bond approved by the clerk of the court in a sum half the amount in controversy, conditioned to pay the judgment of the court. . . .As an alternative to the posting of bond, a taxpayer appealing an order of the Board of Tax Appeals affirming a tax assessment may, prior to the filing of the petition, pay to the agency, under protest, the amount ordered by the Board of Tax Appeals to be paid and seek a refund of such taxes, plus interest thereon, in the appeal. The taxpayer shall pay to the agency any tax included in the assessment which he is not contesting. If the petition initiating the appeal is filed by the taxpayer, the payment of the uncontested tax shall be made prior to the expiration of the sixty-day time period for filing a petition under subsection (1) of this section. . . .Failure of the taxpayer to timely pay the uncontested tax shall. . .result in the taxpayer's appeal. . .being dismissed with prejudice and with judgment being entered granting the agency the relief it requested.

Miss. Code § 27-77-7(3).

In summary, in order to comply with Miss. Code § 27-77-5 and § 27-77-7 and to properly appeal an assessment made by MDOR, a taxpayer must:

(1) file an appeal with the BOR within sixty (60) days of the date of the assessment;

(2) within sixty (60) days of a decision by the BOR, a taxpayer must file an appeal

---

[41]Miss. Code § 27-77-7 was amended by the legislature. The effective date of amended § 27-77-7 was January 1, 2015. Since the Assessment and the Debtor's subsequent appeals occurred in 2012 through 2014, and prior to the 2015 amendments, the Court will look to the version of § 27-77-7 in effect prior to January 1, 2015.

with the BTA; and

(3) within sixty (60) days of a decision by the BTA, a taxpayer must filed an appeal

with the chancery court and post a surety bond or pay the tax in protest.

## C. Discussion

MDOR asserts that the Debtor's tax liability was contested and adjudicated by administrative and judicial tribunals of competent jurisdiction as contemplated by § 505(a)(2)(A): the Debtor had hearings before the BOR and the BTA and attempted to appeal to chancery court. Consequently MDOR asserts that the Debtor may not relitigate its tax liability in bankruptcy court.

In support of its position, MDOR cites the Fifth Circuit case of *Trans State, supra* note 35, at 13. In *Trans State*, Trans State contested the assessment for sales and use tax assessed by the Texas Comptroller of Public Accounts (Comptroller). Pursuant to Texas law, an administrative law judge considered all of the documents submitted by Trans State and by the tax division. The administrative law judge then issued its proposed findings to the Comptroller affirming the assessment. Thereafter, Trans State "filed its exceptions; the Tax Division responded."[42] The administrative law judge rejected Trans State's exceptions, and "the Comptroller issued its Decision"[43] affirming the assessments. The decision became final twenty (20) days later when Trans State failed to appeal the order.

Trans State subsequently filed bankruptcy. Trans State filed an objection to the proof of claim filed by the Comptroller for the sales and use tax assessment. The bankruptcy court found that it had jurisdiction under § 505 to consider Trans State's objections to the assessment; however, the

---

[42]*Texas Comptroller of Public Accts. v. Trans State Outdoor Advertising Co., Inc. (In re Trans State Outdoor Advertising Co., Inc.),* 220 B.R. 339, 342 (S.D. Tex. 1997).

[43]*Id.*

Comptroller appealed, and the district court reversed the bankruptcy court.

The district court found that "the bankruptcy court did not have jurisdiction under 11 U.S.C. § 505(a)(2)(A) to redetermine the tax liability."[44] The district court found that the proceeding before the administrative law judge was adversarial and before a tribunal of competent jurisdiction. Trans State could "call witnesses to testify at a contested hearing where the rules of evidence would be applied. Trans State also had the opportunity to appeal the Comptroller's decision. . . ."[45] Trans State appealed to the Fifth Circuit.

In affirming the district court, the Fifth Circuit basically adopted the findings of the district court. The Fifth Circuit agreed that the procedure established by Texas law afforded Trans State the opportunity to contest the assessment before a tribunal of competent jurisdiction. The Fifth Circuit found that "[i]f the tax liability is determined by the state prepetition through an adjudicative system, the bankruptcy court is without jurisdiction to redetermine the tax liability."[46]

In its Memorandum, the Debtor also cites the Fifth Circuit opinion of *Trans State* and concedes that the administrative appeals process set forth in the Mississippi Code satisfies the Fifth Circuit's holding in *Trans State.* In is Memorandum the Debtor states: "the administrative appeals process is clearly set forth in the Mississippi Code and the Mississippi Supreme Court has ruled that the administrative appeal procedure is 'quasi-judicial' and satisfies the requirements of due process. see *(sic)* [*Akins v. Miss. Dept. Of Revenue*, 70 So.3d 204 (Miss. 2011)]".[47]

---

[44]*In re Trans State,* 140 F.3d at 620.

[45]*Id.* at 621.

[46]*Id.*

[47]*Memorandum in Opposition,* Adv. Dkt. #33 at p. 7.

Since the Debtor concedes that the process set forth in Mississippi law for the determination of a taxpayer's tax liability is *quasi-judicial*, the Debtor's tax liability was contested and adjudicated by a "judicial or administrative tribunal of competent jurisdiction" as contemplated by § 505(a)(2)(A). However, while the Debtor concedes that the process was adequate, the Debtor contends that its tax liability has been not been "fully and finally"[48] adjudicated, and therefore, this Court may redetermine the Debtor's tax liability.

In support of its position that it "still has the opportunity for judicial review and there has not yet been a final adjudication on the merits"[49] regarding its Assessment, the Debtor cites the case of *Central Valley AG Enterprises v. United States*, 531 F.3d 750 (9th Cir. 2008).

In *Central Valley,* the taxpayers had a conference with the Internal Revenue Service's Appeals Office. The Court of Appeals for the Ninth Circuit described the conferences as: "Despite the Appeals Office's name, such conferences are informal and more closely resemble alternative dispute resolution than an administrative hearing."[50] After the Appeals Office upheld the assessment, the taxpayers "then had 150 days to file a petition for a readjustment in either the Tax Court, a district court, or the Court of Federal Claims. . . .None of the [taxpayers] filed such a petition, however."[51]

The Ninth Circuit discussed *Trans State* and distinguished the facts before it from *Trans*

---

[48]Under § 502(a)(2)(A), the requirement is that the tax claim was *adjudicated* prior to the commencement of the case. Contrary to what the Debtor contends, § 502(a)(2)(A) does not state that a tax claim must have been *fully or finally adjudicated* prior to the filing of the bankruptcy petition.

[49]*Memorandum in Opposition,* Adv. Dkt. #33 at p. 10.

[50]*Central Valley*, 531 F.3d at 753-54. (citation omitted).

[51]*Id.* at 754.

*State.* The Ninth Circuit found that unlike the proceedings in *Trans State*, the conferences held before the Appeals Office were not quasi-judicial. Therefore, there was no adjudication by an judicial or administrative tribunal as contemplated by § 505(a)(2)(A).[52]

The Debtor states that like the taxpayers in *Central Valley*, its tax liability has not been adjudicated because it "has not yet been able to fully exercise its appeal rights by completing the final review in the Chancery Court of Hinds County."[53] Therefore, the Debtor believes that this Court can redetermine its tax liability.

The Court agrees with the Ninth Circuit that the facts in *Central Valley* do not rise to the level of an adjudication found in *Trans State* and as contemplated by § 505(a)(2)(A). However, the Court does not agree with the Debtor that *Central Valley,* and not *Trans State,* is controlling in the case at bar. The Debtor places significance on the fact that the chancellor dismissed its appeal without prejudice. The Debtor believes that a dismissal without prejudice entitles it to file another appeal in chancery court. For that reason, the Debtor asserts that like the taxpayers in *Central Valley* its tax liability has not been adjudicated pursuant to § 505. The Court does not agree.

In *Akins, supra* at p. 20, the supreme court addressed a similar argument by a taxpayer. In *Akins*, the taxpayer received the assessment from the MDOR; appealed the assessment to the BOR; appealed the BOR's ruling to the BTA; and then timely filed an appeal with the chancery court. However, the chancery court dismissed the taxpayer's appeal for lack of subject matter jurisdiction due to the taxpayer's failure to pay the tax under protest or to post a surety bond within the thirty (30)

---

[52]*Id.* at 759.

[53]*Memorandum in Opposition*, Adv. Dkt. #33 at p. 8.

day period.[54]  The taxpayer appealed to the supreme court arguing that the requirement to post a

surety bond or to pay the tax under protest deprived him of his right to due process.  The taxpayer

asserted that he was entitled to a judicial review because the administrative review of the BOR and

BTA was insufficient.

The supreme court disagreed.  The court found "the requirement to pay the tax before seeking

judicial review has been held to provide taxpayers with a fair opportunity to challenge the validity

of the tax."[55]  In upholding the dismissal by the chancery court, the supreme court further held that:

> Mississippi Code Sections 27-77-5 and 27-77-7 provided Akins two full
> administrative hearings and an opportunity for judicial review in order to contest the
> validity of the tax assessment. . . .Finding that the statute does meet constitutional
> standards and Akins failed to pay the tax or post a bond in order to grant jurisdiction
> to the chancery court, we affirm the decision of the chancellor.

*Akins,* 70 So.3d at 209.

The supreme court clarified its holding in *Akins* in the case of *Khurana v. Miss. Dept. of*

*Revenue,* 85 So.3d 851 (Miss. 2012).  In *Khurana,* the taxpayer timely appealed an assessment to

the BOR and the BTA.  On the thirtieth day from the entry of the BTA's order, the taxpayer timely

appealed to the chancery court,[56] but the taxpayer failed to pay the taxes under protest or to post a

surety bond.  Approximately eight (8) days after he had filed his appeal, the taxpayer paid all but

$212 of the assessed taxes.  MDOR filed a motion for summary judgment and dismissal because

MDOR argued that the chancery court lacked jurisdiction due to the fact that the taxpayer failed to

---

[54]At the time the taxpayer filed his appeal, the version of Miss. Code § 27-77-7 in effect at that
time gave a taxpayer thirty (30) days from the date the BTA entered its order to appeal to the
chancery court.

[55]*Akins*, 70 So.3d at 209.

[56]Like *Akins*, the version of Miss. Code § 27-77-7 in effect at that time gave a taxpayer thirty (30)
days from the date the BTA entered its order to appeal to the chancery court.

pay the tax under protest within the thirty (30) day time period. The chancellor denied the motion for summary judgment and dismissal because the taxpayer had paid the taxes, and therefore, "it would be 'an inequitable forfeiture to deny him the opportunity to pursue a court review of the assessment.'"[57] At the trial on the merits, the chancery court affirmed the assessment finding that the taxpayer failed to overcome his burden to prove the assessment was inaccurate. MDOR appealed to the supreme court.

The supreme court reversed the findings of the chancery court because the supreme court found that the chancery court should never have reached the merits of the case. The supreme court found that "[t]he statute is mandatory, and the appealing party is required not only to file a petition in the chancery court, *but also to pay* the bond or tax within the thirty-day period."[58]

The supreme court went on to clarify its holding in *Akins*:

¶ 11.  We take this opportunity to clarify Akins on the issue of jurisdiction. This Court in Akins reviewed Mississippi Code Section 27–77–7(4), which provides, "[t]he chancery court in which a petition under subsection (1) is properly filed shall have *jurisdiction* to hear and determine said cause or issues...." (Emphasis added.) Although this Court used the term "subject matter jurisdiction" to explain Akins's failure to perfect his appeal, failure to perfect an appeal under Mississippi Code Section 27–77–7 does not divest the chancery court of *subject matter* jurisdiction. Subject matter jurisdiction refers only to the court's power to exercise authority over the nature of the case and type of relief sought. *Black's Law Dictionary* 689 (abr. 7th ed.2000). Clearly, chancery courts do have subject matter jurisdiction over appeals from tax assessments ordered by the Commission. However, failure to perfect such an appeal would deprive the chancery court of authority to review and revise the particular cause or issues presented in that appeal, since the chancery court's authority to review the decisions of the Commission is governed by compliance with the statute. We have held that a circuit court "has no authority to judicially create a right of appeal from an administrative agency in the absence of clear statutory authority therefore." Likewise, a chancery court has no authority to create a right of appeal from an administrative agency in the absence of clear statutory authority. In other

---

[57]*Khurana,* 85 So.3d at 853.

[58]*Id.* at 854 (emphasis in original).

words, the chancery court is without *appellate* jurisdiction over an appeal filed under Mississippi Code Section 27–77–7 that is not in full compliance with the statutory requirements.

¶ 12.  Khurana, like the appellant in Akins, filed a petition to appeal the assessments ordered by the Commission, but failed to pay the tax or post a bond within the thirty-day period. Therefore, he did not fulfill the mandatory requirements necessary to properly perfect his appeal under Mississippi Code Section 27–77–7.

CONCLUSION  ¶ 13. Mississippi Code Section 27–77–7 clearly mandates that a taxpayer *must* file a petition in chancery court *and* either pay the tax or post a bond within the thirty-day time limit in order to properly perfect an appeal from an order of the Commission.  Khurana failed to comply with the statutory requirements, as he did not pay his tax or post a bond until after the time limit had expired. Therefore, the chancery court did not have appellate jurisdiction over Khurana's appeal, and should have granted MSDR's motion for summary judgment and dismissal.

*Khurana,* 85 So.3d at 855. (emphasis in original) (footnotes omitted).  *See also Southside, Inc. v. Miss. Dept. of Revenue,* No. 2013-SA-01905-SCT, 2014 WL 6480538, at *1 (Nov. 20, 2014)(chancery court is without appellate jurisdiction if an appeal "is not in full compliance with the statutory requirements");  *Virk v. Miss. Dept. of Revenue,* 133 So.3d 809 (Miss. 2014)(taxpayer's appeal was involuntarily withdrawn when he failed to appear at Board of Review hearing, therefore, taxpayer had no statutory right to appeal to Board of Tax Appeals or chancery court).

### 1.

In the case at bar, the Debtor asserts in its Response that the BTA did not send it or its attorney a copy of the June 5, 2013, BTA Order.  With regard to the mailing of orders of the BTA, the *Rules of the Mississippi Board of Tax Appeals* state in pertinent part:

> *Rule 4.3 Establishment of Official Mailing Address.*  By statute, regulation and when directed by the Board, the Executive Director is required to mail notices, orders and other documents to parties.  Where the party is represented in the administrative appeal, unless requested otherwise in writing, such mailings to the party will be sent to his designated representative.  Mailing to a designated representative in an administrative appeal shall constitute mailing and notice to the party represented. *There is a presumption that the addressee received such notices, orders and/or*

*documents if mailed to the addressee's last known address, being the official mailing address that the Executive Director has for the addressee.* The process by which this official mailing address is established and changed is as follows:

> A. The official mailing address of a person, including, but not limited to, a party or a party's designated representative, shall be the mailing address for that person appearing on the first document filed with the Executive Director in the administrative appeal containing a mailing address for that person.
>
> . . . .

*Rule 4.22 Orders of the Board.*

> . . . .
>
> D. Any time period for appealing from a decision of the Board to Court will run from the date of the written order. . . .
>
> . . . .
>
> G. The Executive Director shall mail a copy of the written order entered in an administrative appeal to all parties in the administrative appeal.[59]

The Debtor nor its attorney have presented any proof that the BTA did not have correct mailing addresses for the Debtor or for Mr. McGee. Since the June 5, 2013, BTA Order is presumed to have been mailed to the Debtor and its attorney, the Debtor's appeal to the chancery court filed on October 10, 2013, was not timely filed. As a result, pursuant to Miss. Code § 27-77-7(1), the BTA Order became final sixty (60) days from June 5, 2013, on or about August 4, 2013. Consequently, this Court does not have jurisdiction to redetermine the Debtor's tax liability under § 505(a)(2)(A) because the Debtor's tax liability was contested and adjudicated before an administrative or judicial tribunal of competent jurisdiction prior to the time the Debtor commenced

---

[59]*Rules of the Mississippi Board of Tax Appeals*, Title 35: Tax, Part 101, Chapter 4: General Rules of Practice, Rules 4.3, 4.22. (emphasis added).

its bankruptcy case. Therefore, Count I should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

**2.**

In the alternative, giving the Debtor the total benefit of the doubt and considering the facts in the light most favorable toward the Debtor, the October 10, 2013, appeal to the chancery court was timely filed as it was within sixty (60) days of the date the Debtor's attorney acknowledges he received a copy of the BTA Order.[60]

As noted previously, attached to the Chancery Complaint is the *Affidavit of Sandra Crosby,* the Executive Director of the McGee Law Firm. In her affidavit, Ms. Crosby states that on or about September 16, 2013, the BTA emailed to her a copy of the BTA Order dated June 5, 2013. The Debtor then filed its appeal with the chancery court on October 10, 2013. This appeal was filed within sixty (60) days of when the Debtor's attorney received a copy of the BTA Order.

Attached as an exhibit to MDOR's Motion to Dismiss is a copy of the Transcript of the hearing in chancery court. At the hearing, MDOR argued that the Debtor's appeal of the BTA Order should be dismissed. MDOR argued:

> Your Honor, we brought the motion to dismiss for failure to state a claim  The plaintiff's complaint sought relief from this Court under statute 11-13-11, injunctive relief. However, the actual relief that was sought by the plaintiff was to invalidate or revoke the Board of Tax Appeals['] order and to actually render the audit meritless, incorrect, however it is you want to term it. The problem we have with that is to be able to confer jurisdiction upon this Court as to the validity of the sales

---

[60]From the Transcript, it does appear that the issue of whether the BTA Order was mailed to the Debtor and its attorney was raised. However, the Court is not privy to any of the pleadings or other documents in the chancery court matter except for the Chancery Complaint and the Transcript from the hearing. Therefore, the Court does not know what, if anything, the chancellor ruled with regard to the issue of the presumption of mailing and the issue of whether the Debtor and/or its attorney received the BTA Order dated June 5, 2013.

tax audit, the complaint must be brought under 27-77-7.  Because it was not, it is our argument that there is not appellant jurisdiction. . . .We also have an issue of the timeliness of the complaint.  The Board of Tax Appeals' order was entered on June 5th of 2013.  It had – the plaintiff has 60 days in which to appeal to Chancery Court.  Those 60 days expired on August 4th of 2013.  The plaintiff has claimed that it did not receive a copy of the order.  Hence this is why Sam Polk from the Board of Tax Appeals was originally brought into the case and has subsequently and very recently been dismissed.  The complaint was not filed until October 10 of 2103.  So it is also our position in the alternative that we have a timeliness issue of the filing of this appeal and again no jurisdiction being conferred on the Court.[61]

In response to MDOR's arguments to the chancellor, the Debtor's attorney, Mr. McGee,

stated to the chancellor:

I agree with everything [MDOR] just said.  We had *(sic)* tried to post a bond.  Did not have the financial wherewithal to qualify for a bond.  The taxpayer was unable to raise the money to pay the tax and sued *(sic)* for a refund. . . .[W]e would agree that 11-13-11 does not apply if the taxpayer had an adequate remedy of law which in this case the Board of Review would have been the adequate remedy of law.  And so I agree with [MDOR's] arguments that jurisdiction was never conveyed to the Court . . .The statutes that have been cited 27-77-7 lays out various parameters the taxpayer must meet to avail itself of jurisdiction of the Court.  We were unable to do that.  And we have been unsuccessful in the courts by trying to establish jurisdiction for – under 11-13-11.[62]

The chancellor then dismissed the Chancery Complaint.[63]

The Debtor acknowledges that it did not "fulfill the mandatory requirements necessary to

---

[61]*Motion to Dismiss Adversary,* Adv. Proc. No. 1400037EE, Adv. Dkt. #9, Exhibit C, *Transcript,* p. 3, 4-5.

[62]*Id.* at 6-7.

[63]The Court notes that even though Miss. Code § 27-77-7(3) clearly states that failure of the taxpayer to either post a bond or to pay the tax prior to the expiration of the sixty days "shall. . .result in the taxpayer's appeal. . .being dismissed with *prejudice* and with judgment being entered granting the agency the relief it requested," the chancellor dismissed the Chancery Complaint without prejudice.  The Court is unsure why Miss. Code § 27-77-7(3) was not raised by MDOR at the chancery hearing.

properly perfect his appeal under Mississippi Code Section 27-77-7."[64]  Miss. Code § 27-77-7 does not state that a taxpayer can wait to file his appeal until the time that the taxpayer has the money to pay the tax under protest or has the money to post a surety bond.  Instead, the statute clearly states that the taxpayer must file the appeal <u>and</u> pay the tax under protest or post a surety bond within sixty (60) days of the BTA's order.

Even with the Court considering the facts in the light most favorable toward the Debtor and holding that the Debtor timely filed its appeal on October 10, 2013, under *Akins* and *Khurana,* the chancery court did not have appellate jurisdiction over the Debtor's appeal because the Debtor failed to pay the tax under protest or to post a surety bond.  Consequently, Count I should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

**3.**

Under any set of facts, the Debtor failed to perfect its appeal of the BTA Order.  "[F]ailure to perfect such an appeal would deprive the chancery court of authority to review and revise the particular cause or issues presented in that appeal, since the chancery court's authority to review the decisions of the Commission is governed by compliance with [27-77-7]."[65]  Since the Debtor has exhausted all avenues of appeal under Mississippi law, the Assessment in the amount of $461,743.00 is final.[66]  Consequently, this Court does not have jurisdiction to redetermine the Debtor's tax liability under § 505(a)(2)(A) because the Debtor's tax liability was contested and adjudicated before

---

[64]*Khurana,* 85 So.3d at 855.

[65]*Id.*

[66]As stated previously, the Court is unsure why MDOR did not raise Miss. Code § 27-77-7(3) in its argument that the chancery court appeal should be dismissed with prejudice.  The fact that the chancery court dismissed the appeal without prejudice does not change the fact that the Debtor has exhausted all appeals with respect to the Assessment.

administrative and judicial tribunals of competent jurisdiction prior to the time the Debtor commenced its bankruptcy case. Therefore under any scenario, Count I should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

## CONCLUSION

The Debtor is a corporation in good standing with the State of Mississippi. Since the Debtor is not an individual, the Debtor is not entitled to a discharge.

In determining whether a bankruptcy court has jurisdiction to determine a debtor's tax liability under § 505(a), the key is whether the debtor's tax liability was contested and adjudicated before an administrative or judicial tribunal of competent jurisdiction. While the Debtor conceded that the process in Mississippi for determining a taxpayer's tax liability is quasi-judicial, the Debtor asserted that its tax liability was not adjudicated because the Debtor's appeal to chancery court was dismissed without prejudice.

Even with the Court giving the Debtor the benefit of the doubt and finding that its October 10, 2013, appeal to chancery court was timely filed, the supreme court has clearly held that in order for a chancery court to have appellate jurisdiction to hear an appeal from the BTA, a taxpayer must not only file its appeal within sixty (60) days of the entry of a BTA order, but the taxpayer must also fully comply with Miss. Code § 27-77-7 and pay the tax under protest or post a surety bond. The Debtor admitted that it failed to pay the tax under protest or to post a surety bond in order to perfect its appeal within the sixty (60) day period provided by statute. Therefore under Mississippi law, the BTA Order is final, and the Debtor's tax liability was contested and adjudicated prior to the Debtor filing its petition in bankruptcy.

"Simply stated, § 505(a)(2)(A), a jurisdictional statute, is mandatory; Congress did not leave

bankruptcy courts the discretion to disregard tax court adjudications and concomitantly seize jurisdiction out of equitable concerns."[67]   Since prior to the filing of its bankruptcy petition, the Debtor's tax liability was contested and adjudicated before two administrative tribunals of competent jurisdiction and the Debtor had "an opportunity for judicial review in order to contest the validity"[68] of the Assessment, this Court is without jurisdiction under § 505(a)(2)(A) to redetermine the Debtor's tax liability.

Under a Rule 12(b)(6) motion, the Court must decide, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel,* 15 F.3d at 1341.  Since the Debtor's Complaint fails to state any claims upon which relief can be granted, the above-styled adversary proceeding should be dismissed under Rule 12(b)(6).

A separate judgment consistent with this Opinion will be entered in accordance with Rule 7054 and Rule 9021 of the Federal Rules of Bankruptcy Procedure.

**##END OF FINDINGS##**

---

[67]*United States v. Teal (In re Teal),* 16 F.3d  619, 622 (5th Cir. 1994) (footnote omitted).

[68]*Akins,* 70 So.3d at 209.